**No. 59222.**—Empire State Chair Co., Inc., and R. J. Saunders & Co., Inc. *v.* United States, protest 214060–K (New York).

MOLLISON, Judge:   This protest relates to merchandise, described on the invoice as 1,800 pieces of "Sadles A 809," which was assessed with duty at the rate of 50 percent ad valorem under the provision in paragraph 411 of the Tariff Act of 1930 for—

\* \* \* chair seats \* \* \* wholly or in chief value of \* \* \* wood \* \* \* not specially provided for \* \* \*.

The claim chiefly relied upon by the plaintiffs is for duty at the rate of 30 percent ad valorem under the provision in paragraph 412 of the said act, as modified by the Supplementary Presidential Proclamation carrying into effect the General Agreement on Tariffs and Trade, T. D. 51898, for—

Bent-wood furniture, wholly or partly finished, and parts thereof.

A sample of the merchandise involved is before us as plaintiffs' illustrative exhibit 1. It consists of what is obviously a chair seat, manufactured, according to the evidence, by gluing together narrow strips of lumber and machining and bandsawing and shaping the glued pieces into the size and shape necessary, after which the resultant product is cleaned and sanded.

The plaintiffs' claim for duty under the bent-wood furniture and parts provision has two bases: (1) That the seats in question are entireties with certain bent-wood chair frames imported at the same time, and (2) that, in any event, the seats are so made that they can be used only with bent-wood chair frames to make bent-wood chairs.

The sole witness who testified was the general manager of the ultimate consignee, a man of some 30 years' experience in the importation and manufacture of bent-wood chairs. The witness testified that the bent-wood chairs produced by his company were imported in knocked-down condition and the parts assembled in this country by means of screws, no cutting being necessary.

Insofar as the claim that the saddle seats here involved were entireties with frames imported in the same shipment is concerned, it seems clear from the testimony of the witness that such was not the case. The witness testified that the seats in question "may not have any relation to the chairs on this particular invoice" and indicated that the items, described on the invoice as "bentwood chairs," actually consisted of complete chairs, including the seats therefor. As the remainder of the invoice covers 390 backs and 140 seat frames, in addition to the 1,800 seats here involved, and as the witness failed to connect any of the seats involved with any of the foregoing backs and frames, it would appear that the claim based upon the doctrine of entireties is unsupported.

We are of the opinion, however, that plaintiffs have made out a *prima facie* case in support of their claim that the seats at bar are bent-wood chair seats and, consequently, parts of bent-wood chairs. The witness' testimony on that phase of the case is as follows:

Q. Have you ever used an article such as Plaintiff's Illustrative Exhibit 1 in any other manner?—A. It cannot be used except for that one particular frame, because it is already shaped for that bentwood frame. (Tr. p. 11.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

CHIEF JUDGE OLIVER: These seats you refer to, they are shaped and dedicated to a definite purpose?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: Are they used wholly and solely in connection with bentwood furniture?

THE WITNESS: Yes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

CHIEF JUDGE OLIVER: If you use the imported merchandise as a seat for a chair, is it dedicated exclusively for use in connection with bentwood chair frames?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: It is not used for any other kind of a chair?

THE WITNESS: It cannot. (Tr. p. 15.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

R. X Q. Is there anything peculiar about Illustrative Exhibit 1 that it couldn't be used for a seat of a chair other than a bentwood chair?—A. It is in the exact shape the bentwood frame is in.

R. X Q. Aren't there other chairs other than bentwood chairs?—A. If this deviated a half inch, it wouldn't fit the seat. (Tr. pp. 18–19.)

This testimony was uncontradicted, and, in our view, establishes that the seats at bar were dedicated to and suitable for use only with bent-wood chair frames to make bent-wood chairs.

Counsel for the defendant, in the brief filed in its behalf, however, further contends that the language of the competing provisions herein evinces a congressional purpose to include within the provision for "chair seats * * * of * * * wood" all wooden chair seats for chairs imported without frames, regardless of the type of furniture with which they were intended to be used, and, specifically, to exclude wooden seats from the provision for parts of bent-wood furniture.

Counsel for defendant argues that, if the provision for parts of bent-wood furniture and the provision in the same paragraph for parts of wood furniture included wooden chair seats, there would be nothing for the provision for "chair seats * * * of * * * wood" to operate upon, inasmuch as wooden chair seats are *ipso facto* parts of furniture, and, consequently, Congress would have been considered to have performed a useless act in providing separately for "chair seats * * * of * * * wood."

We think counsel has overlooked the fact that, in paragraph 409, Congress provided for furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind, without providing for parts thereof; that seats of some of these may conceivably be made of wood; and that a fairly common article of commerce is steel furniture, which often has seats made of wood. Seats imported apart from but for use in connection with such furniture probably would take classification under the provision for "chair seats * * * of * * * wood," so that the provision seemingly has a considerable sphere of operation.

Moreover, defendant does not seem to carry the contention so far as to urge that wooden seats imported with wooden or bent-wood furniture should be separately classified apart from the furniture of which they are parts. Consequently, it would require a rather strained construction to hold that seats imported with frames would be wooden or bent-wood furniture, while seats imported without frames would not be parts of wooden or bent-wood furniture.

We cannot agree with the conclusion of counsel—

* * * that at all times, including the date of passage of the Tariff Act of 1930, the Congress and the negotiators of tariff trade agreements did not regard "wood chair seats" to be chair parts of any kind.

Counsel further argues that the provision for parts of bent-wood furniture is limited to those parts which are made of bent-wood. It is well known that bent-wood furniture often has parts made of other than bent-wood, and this latter contention, too, appears to us to be for a strained construction not warranted by the ordinary meaning of the language used by Congress. We have examined the legislative and other references cited and quoted by counsel for the defendant for both contentions and find that they do not either directly or by necessary inference support the contentions made.

Being satisfied that the plaintiffs have established that the articles at bar are parts of bent-wood furniture, we hold them to be properly dutiable under the provision therefor in paragraph 412, as modified.

Judgment will issue accordingly.